Honorable Brian D.
Chapter 11
Hearing Date:
Hearing Time:
Hearing Location:
Response Date:

IN THE UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>PRECISION INDUSTRIAL CONTRACTORS, INC.,<br><br>Debtor. | Case No. 15-45167-BDL<br><br>DECLARATION OF MARTY MILLER IN SUPPORT OF FIRST DAY MOTIONS |

I, Marty Miller, declare as follows:

1. I am the Controller for Precision Industrial Contractors, Inc. (the "Debtor"). I am over 18 years of age. Except as otherwise stated herein, if I were called as a witness, I could and would competently testify to the matters set forth herein from my own personal knowledge and based on my review of the Debtor's books and records.

2. The Debtor is a Washington corporation headquartered in Woodland, Washington that is engaged in the industrial construction, dismantling, and moving business, including machinery moving, process piping, equipment installation, concrete plant relocation, steel erection, electrical instrumentation, and demolition. One of its core businesses involves purchasing, dismantling, selling, moving, and installing components from large, no longer operating, paper mills and other industrial facilities. The Debtor's sole shareholder is Rodney Schultz and the corporation is taxed as an S

DECLARATION OF MARTY MILLER IN SUPPORT OF
FIRST DAY MOTIONS - Page 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Case 15-45167-BDL    Doc 7    Filed 11/06/15    Ent. 11/06/15 12:47:25    Pg. 1 of 8

corporation for federal income tax purposes.

3. The Debtor's primary objective in the Chapter 11 case is to restructure its financial obligations with its primary lender, Regents Bank ("Regents"), and its unsecured creditors where it can continue its business operations and propose a plan that will repay not only the amounts owed to Regents but also the amounts owed to its other creditors.

4. The Debtor believes that Regents is the only creditor that has or may have a claim in the Debtor's existing cash collateral (as defined in Section 363(a) of the Bankruptcy Code) and/or in the Debtor's accounts, payment intangibles, inventory, and other assets that will be used, collected, or sold by the Debtor postpetition in the ordinary course of business. The equipment and inventory securing the Regents Obligations have a value of between $3.5 million - $4.5 million, according to a recent appraisal. The Debtor estimates that the accounts receivable securing the Regents Obligations have a value of approximately $3.5 million. Regents has a blanket security interest in all or essentially all of the Debtor's assets, pursuant to various loan agreements, notes, security agreements, and other documents, to secure the Regents Obligations in the aggregate principal amount of $3,893,132.41, together with prepetition interest and other allowable fees and costs. Regents' security interest was perfected by a UCC financing statement filed on December 13, 2012.

5. The Debtor needs the immediate ability to use cash collateral for, among other things, continuing the operation of its business in an orderly manner, making deposits with utility service providers, paying payroll and other postpetition operating expenses, and satisfying other working capital and operational needs. Absent authority to use cash collateral, the Debtor will have to curtail or terminate its business operations to the detriment of all parties in interest. Among other things, the disruption or termination of business operations would have a material and adverse effect on the

DECLARATION OF MARTY MILLER IN SUPPORT OF
FIRST DAY MOTIONS - Page 2

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Case 15-45167-BDL    Doc 7    Filed 11/06/15    Ent. 11/06/15 12:47:25    Pg. 2 of 8

value of the Debtor's business. The Debtor's use of cash collateral will enable it to maintain the going concern value of its business.

6. The Debtor requires the immediate authority to use cash collateral on an interim basis over the next four weeks pending a final hearing on its motion to use cash collateral to insure that it is able to continue business as usual, and thereby avoid immediate and irreparable harm to the estate.

7. The Debtor's workforce consists of 68 employees. All of those employees are employed on a full-time basis and none are union employees.

8. The Debtor operates on a calendar year. For 2014, revenues for the Debtor's combined operations totaled approximately $18,478,827.71. Revenues for the first nine months of 2015 totaled approximately $8,502,115.63.

9. The Debtor's ability to preserve its existing business operations and successfully reorganize is dependent upon the continued service of its workforce. Employees work in numerous facets of the Debtor's operations, including managerial and clerical, equipment operation, transportation, installation, and demolition. The experience and knowledge of these employees is critical to Debtor's ongoing business. If the Debtor fails to pay the prepetition obligations and continue employee benefits, its employees will suffer significant hardship, and may be unable to meet their personal living expenses. Such a result would obviously have a negative impact on employee morale and would likely result in unmanageable turnover and loss. The Debtor must demonstrate its ability to continue paying its employees and providing those benefits that have been promised to them as a condition of their employment with the Debtor. Debtor seeks to continue the regular payment of wages, salaries, and employment-related benefits and expenses as they come due in the ordinary course, including those payroll expenses that were incurred prepetition but which come due for payment postpetition. The Debtor believes the timely payment of these payroll expenses is

DECLARATION OF MARTY MILLER IN SUPPORT OF
FIRST DAY MOTIONS - Page 3

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Case 15-45167-BDL    Doc 7    Filed 11/06/15    Ent. 11/06/15 12:47:25    Pg. 3 of 8

necessary and desirable to the Debtor's successful reorganization and that such payments are in the best interests of creditors and the estate.

10. Employees are paid weekly for work performed during the prior week. As of the Petition Date, the Debtor estimates the accrued and unpaid payroll for prepetition services of employees is $140,000. The Debtor seeks authority to pay approximately $140,000 for its payroll that will come due on November 12, 2015, for work performed between October 29 and November 5, 2015.

11. The Debtor's books and records indicate that no individual's prepetition wages and benefits exceed the § 507(a)(4) and (5) statutory limit of $12,475, to any one employee.

12. The Debtor maintains the following employee benefit plans and incurs estimated monthly contributions and expenses as set forth below:

| | | |
|---|---|---|
| Medical and Prescription Insurance- | | $45,400 |
| Dental/Vision Insurance | - | $4,900 |
| Life Insurance | - | $5,931.69 |
| Health Care Spending | - | $1,948 |
| 401(k) Plan | - | $3,500 |
| Garnishment Orders | - | $2,200 |

Of these sums, approximately $91,180.20 had accrued as unpaid employee benefits through the Petition Date. In addition, Debtor reimburses employees in the ordinary course for necessary business and travel expenses. The outstanding amounts of such expenses are unknown at this time. Debtor seeks authority to continue to provide these programs in existence prior to the Petition Date and to pay all amounts due as such amounts come due in the ordinary course, including amounts accrued on account of prepetition employee service.

13. Debtor further seeks authority to pay any and all local, state, and federal

DECLARATION OF MARTY MILLER IN SUPPORT OF
FIRST DAY MOTIONS - Page 4

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Case 15-45167-BDL    Doc 7    Filed 11/06/15    Ent. 11/06/15 12:47:25    Pg. 4 of 8

withholding and payroll related taxes relating to prepetition periods and postpetition periods relating to the Debtor's employees.

14. Debtor obtains electricity, natural gas, and other similar services (collectively, the "Utility Services") from several utility companies (the "Utility Companies"). A list of substantially all of the Utility Companies providing service to the Debtor is attached hereto as Exhibit A. The Utility Services are essential to the Debtor's operations.

15. It is essential that utility services continue uninterrupted. If the Utility Companies are permitted to terminate utility services the Debtor will be unable to continue its operations which are essential for its reorganization.

16. As of the Petition Date, the Debtor maintained five (5) operational bank accounts with Columbia Bank – (a) general checking, (b) payroll checking, (c) wire, (d) eBay, and (e) deposit (collectively, the "Prepetition Deposit Accounts"). The Debtor deposits its revenues, as received, in these accounts. It intends to transition these accounts to U.S. Bank, or another depository institution authorized by the Office of the United States Trustee (the "U.S. Trustee").

17. In the ordinary course of its operations, Debtor deposits funds into the Prepetition Deposit Accounts, and transfers funds between and among the Prepetition Deposit Accounts as may be necessary or appropriate to pay expenses. The Debtor makes all disbursements to third parties from the general checking account referenced above. The Debtor accounts for all transfers between and among the Prepetition Deposit Accounts and reconciles the Prepetition Deposit Accounts monthly. The Debtor maintains accurate and complete accounting records with respect to all transactions between and among the Prepetition Deposit Accounts and with respect to payments to third parties. The Prepetition Deposit Accounts, the Debtor's practice of paying expenses and transferring funds between and among the Prepetition Deposit Accounts,

DECLARATION OF MARTY MILLER IN SUPPORT OF
FIRST DAY MOTIONS - Page 5

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Case 15-45167-BDL    Doc 7    Filed 11/06/15    Ent. 11/06/15 12:47:25    Pg. 5 of 8

and the accountings related thereto, are collectively, the "Cash Management System."

18. Payments for payroll related expenses, including IRA contributions, payments relating to medical, dental, and other benefits, and reimbursement of out-of-pocket expenses are drawn on the Prepetition Deposit Accounts.

19. It would be an extreme hardship on the Debtor and would cause a substantial disruption in its operations if the Debtor were required to immediately close all of its present accounts and open new accounts. The Debtor's payroll related expenses are directly withdrawn from these accounts and directly deposited in most of the employees accounts.

20. Debtor believes that to continue to successfully carry out the Debtor's operations, there must be minimal disruption to its administrative affairs, and that the maintenance of its Cash Management System is essential to protecting the Debtor's operations, the continuity of its workforce, and the value of its estate.

21. Columbia Bank deposits are federally insured up to the limits set by the FDIC, and absent those days when large deposits are made to the accounts, the funds on deposit are generally within the insured limits.

22. The Debtor requires the ability to continue to utilize its Cash Management System so that it may continue its operations uninterrupted. The Debtor's Cash Management System is maintained through a well-established banking relationship and series of related accounts which allow the Debtor to manage and control receipts and disbursements and to account for all transactions.

23. In May, 2013, the Debtor purchased the personal property assets located in a paper mill in Snowflake, Arizona from Snowflake Mill Investors, LLC and Rabin Worldwide, Inc. ("SMI/Rabin"). Regents provided the financing for that purchase. Pursuant to its agreement with the Seller, the Debtor had a period of one year to dismantle the mill and move all of the personal property off site. The Debtor

DECLARATION OF MARTY MILLER IN SUPPORT OF
FIRST DAY MOTIONS - Page 6

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Case 15-45167-BDL    Doc 7    Filed 11/06/15    Ent. 11/06/15 12:47:25    Pg. 6 of 8

commenced doing so, removing and selling assets valued at approximately $4 million over nine months, with approximately $8 million in additional assets still to be removed. Approximately three months before the one-year dismantling period expired, however, SMI/Rabin sold the real property to Snowflake Industrial Park, LLC ("SIP"), which proceeded to lock the Debtor out and would not let it complete the removal of the assets it had purchased. This precipitated two lawsuits by the Debtor against SMI/Rabin and SIP, one in Arizona and one in California for breach of contract and other causes of action. The Debtor has expended approximately $1,365,000 in attorney's fees on that litigation, with the Arizona case expected to go to trial in the spring of 2016 if not settled. This lawsuit, as well as the Debtor's inability to realize value for the remaining assets that were left on site, and taken and disposed of by the buyer of the real property, severely hampered the Debtor's cash flow. Regents has provided some concessions during this period, however, on October 8, 2015, it filed a lawsuit against the Debtor in Clark County Superior Court, seeking, among other things, a judgment against the Debtor and two guarantors for the Regent Obligations and the appointment of a receiver to take control of Regents' collateral and liquidate it to pay off the Regents Obligations. In response to Regents' actions, the Debtor chose to file this Chapter 11 reorganization case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 5th day of November, 2015, at Woodland, Washington.

*/s/ Marty Miller*
_____
Marty Miller

*23327-001\DECLARATION OF MARTY MILLER (02206768);1

DECLARATION OF MARTY MILLER IN SUPPORT OF
FIRST DAY MOTIONS - Page 7

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Case 15-45167-BDL    Doc 7    Filed 11/06/15    Ent. 11/06/15 12:47:25    Pg. 7 of 8

Precision Industrial Contractors, Inc. Utilities
Monthly Utility Expense by Vendor & Amount
As of 11/05/15

| | | |
|---|---|---|
| AT & T (Phone) | | $349.98 |
| AT & T (Phone) | | $25.43 |
| Comcast- 7558 (Phone/ Main line) | Main Bldg Shop | $682.54 $123.93 |
| Cowlitz PUD Electric | Main Bldg Shop | $1,680.84 $664.50 |
| City of Woodland (Water) | | $1,454.95 |
| Northern Energy Propane | | $391.18 |
| Verizon (Cell Phone) | | $5,493.53 |
| Waste Control | | $694.58 |
| Total: | | $11,561.46 |

Exhibit A
Page 1 of 1